Daryl and I read 306, 6234, Roger and Warren. Please approach the podium and tell us your name and who you represent. Each side will have 15 minutes. I advise the appellant to save a few minutes for rebuttal. And we try to be – please try to stay as close to your time as possible because we do have three cases today. And if you go on too long, I certainly will cut you off. Remember that we have read your material and we're familiar with the issues, so I would suggest that you get to your strongest and most important issue first. Whenever you're ready, the appellant may proceed. May it please the Court, my name is Todd McHenry and I represent Roger Moore. I'd like to reserve two minutes for rebuttal. There are five issues before the Court, and of those five, I'm certainly happy to answer questions on any of them. However, I'd like to direct the Court's attention simply to the first issue, which is that there was a bona fide doubt that Roger Moore was unfit for trial, where he was previously found fit on the express condition that he received medication. And on the day of trial, he reported to the Court in answer to the Court's inquiry that he had not received medication on the day of trial and had not received medication two days prior. Additionally, he indicated that there was a transfer from Division 8 to Division 2, at which point he said, things were messed up and I have not been receiving my medication on a daily basis. Wasn't his medication, didn't he get one dose in the morning and one at night or something like that, essentially? At the time of the fitness evaluation, he was on two different drugs. They were both administered. One was administered in the morning, that was a Zoloft, 150 milligrams, and then in the evening, the Doxepin, both antidepressants. And at the time, though, when he brought forth to the Court that he may not have received medication, he also notified that he was on Seroquel and Doxepam, which is two different medications. And what he was on at the time, he was determined to be fit only with medication. So there's some ambiguity that there may have been a medicine change sometime between being found fit for trial with medication and showing up to trial. During the fitness evaluation... I mean, maybe I read it wrong, but it seemed to me that a fair reading of the briefs indicated that he did not get the medication in the morning. So he's one pill short. We don't know what happened in the afternoon when he went back. Didn't this go over more than one day? Correct. Okay. And several days before the date of trial, he didn't get his medication. My presumption is that he didn't get either doses. Correct. So we have for the, let's call it the three-day period prior to trial, including the first date of trial, no pills. He did not get three pills. And my question to you, counsel, is whether not taking pills for three pills is a bona fide doubt as to his fitness. Yes. And there are two points to make in answer to your question. First, to clarify, because it is unclear from the briefs, and I apologize, but there was additionally the statement made by Roger Moore that things were messed up from that divisional transfer. So there is at least suspicion that there could be more medicine that he was missing throughout that time. So that being corrected. Also, if you look at the case law, People v. Jackson, in that case, the issue was whether or not the defendant was, whether there was a bona fide doubt that the defendant was fit to stand for the sentencing. And, Jackson, didn't the trial court, this is after, it was at the time of sentencing, as I recall, and didn't the trial court order an examination and that it wasn't held? That's correct. Okay. A little bit different. Correct. In this case, the only time that Roger Moore was evaluated, he was already receiving medication. So, and that fitness hearing, it was unequivocal that the doctor said he needed the medication to be fit. On direct examination, cross examination, redirect, recross, that was established again and again. And furthermore, Dr. Goodsman clarified that the finding of fitness was based on the assumption that he would receive medication up to and throughout trial. So the words throughout trial suggest, in our view, that this is not simply a case such as People v. Hall, where the expert came in and testified that it's going to take three weeks before a defendant would. Anything that occurred in the courtroom, I'm saying in the courtroom, whatever, that would indicate a fitness problem other than the failure to take these pills? There's not. Any inappropriate responses to the judge's questions or anything of that nature? No, Your Honor. But, I mean, to be fair, he also did not testify at trial. So the amount of exposure that the trial court had was somewhat limited. I mean, he didn't get to take the stand. She told the judge he wasn't going to testify, didn't she? Correct. But still, this opinion of Dr. Goodsman, that was uncontradicted, am I correct? Correct. So we're pretty much cemented in on that being the fact that he needed his medication. Correct. I'm having difficulty with the way the defendant's attorney or defendant raised this issue. I mean, it wasn't raised during the trial, was it? It was raised. Was there a procedural default here? No, Your Honor. This is the reason why. First, the issue was raised and brought before the court's attention by defense counsel. At that point, defense counsel, well, I'm sorry, then the state asked the judge to please inquire of the defendant as to whether or not he's medicated. Roger Moore then indicated that he had not received a medication. Didn't the judge instruct the defense counsel to go and inquire into it, talk to her client and find out what was going on? And she never said anything more about it after that. So, I mean, back to Justice Harris's question, is there some kind of procedural default? Isn't that the lawyer's responsibility to come back to the judge after he specifically instructs her to find out what's going on? I mean, after all, she presumably is the one that had the relationship with her client. And she never said anything else after that, did she? It was never raised again. It was raised in post-trial motion. It was renewed. During the course of the trial, that's Justice Harris's question. It was never raised again. Isn't that true? That's correct. Both before and during. Before it was. She renewed the fitness issue on the morning of trial, and then that's when the exchange happened between the judge and Roger Moore. So when he heard this testimony from Moore that he had missed a pill, something went wrong, or he missed a pill, at that time is it your position that the judge has an obligation right then and there to make a decent inquiry? The judge in this case did make an inquiry and said, I'm uncertain of the effects of missing a day's medication. I'm not sure if it's an issue. If it is, bring it up later. What we're saying is simply that I'm not trying to defend defense counsel and say that they did the best thing under the circumstances. However, in determining ---- They didn't do anything, counsel. That's the problem. They never raised this at all during the trial. Could it have been some kind of strategic decision? It was not raised. If you are very concerned about your client missing medication, wouldn't you raise it during the course of the trial? Would you wait until the trial is over for some time and then file a post-trial motion? Does that seem like good procedural practice to you? Again, I'm not trying to defend that that was good practice. However, it was made clear on the record after the trial when they're arguing at the post-trial motion. We're asking you about during the trial. That's what Justice Harris is concerned about in terms of the procedural waiver. There's one important fact, if I may, though, that happened after the trial that relates to what was going on during trial. And that fact after trial was that defense counsel checked during that break when they had an opportunity to further inquire. Defense counsel put on the record that I checked during the break and I found out that there are no further documents at CERMEC that give us any indication of whether or not the defendant actually received the medication. So they keep records, apparently, of what your prescription is but not whether that was dispensed to you on every given day. So, again, it would have been great had counsel brought that to the judge's attention again and said, listen, this is the only evidence that is out there and that can be offered to show that there's a bona fide doubt. But if this court looks at the analysis in People v. Jackson and People v. Hall, what's important is once you have a finding that fit with medication and there's a doubt as to whether or not you're receiving medication, you go back, look to what the expert found in their original fitness determination that the judge also ruled on consistently with. And if it's unequivocal or unqualified in the language of this court in People v. Hall, where you have no indication on the record that this defendant would take several weeks before he would decline into a state where there's a bona fide doubt, again, the standard is simply whether there's a bona fide doubt. We're not suggesting that he was absolutely unfit in that moment. What we're saying is that just as the trial court itself recognized, hey, I'm uncertain of the effects, well, that's precisely what having a fitness hearing at that point could have clarified. Well, counsel, at that juncture, at that moment, does the burden shift to the state to then show by preponderance of evidence that he's fit? Absolutely. Absolutely. Once there's a bona fide doubt, unequivocally the statute puts the burden onto the state at a fitness hearing. Assuming we agree with you, what would be the proper remedy here? Does he go back for a new trial or do we order a post-hearing fitness evaluation? Those are absolutely the two different remedies. In this case, we believe the facts support a new trial more so than a retrospective fitness hearing simply because, as indicated before, the amount of information that was developed contemporaneous with the trial is extremely limited. In this case, we have on the record that they didn't keep documentation of what he was actually receiving, and he's reporting, honestly, I didn't get it this day, got it yesterday, didn't get it two days ago, but ever since his transfer, things have been messed up and I haven't been receiving it on a daily basis. So even for an expert to be able to reconstruct, you know, to what degree was he medicated or unmedicated, it's going to be difficult. You didn't raise an ineffective assistance of counsel claim, but, you know, doesn't this lawyer have some responsibility to do this? If you're now here before us saying, well, none of this was done during the trial and it really should have been the trial judge's responsibility to inquire into all of this, what's the lawyer's responsibility in all of this? Again, were there a fact that I could have pointed to saying that, hey, there was information that counsel didn't get access to but it was out there and we know it's out there but for counsel's failure to get it? The bottom line is the trial court was apprised of all the information that was available on this issue and based on the case law that we've cited. How do we know that? I don't know that. I certainly can't garner that, what you're saying from what's in the record or from what's written in the brief or what's in the record does not tell me what you are just saying. How do we know that? Do we know that there's a bonafide doubt based on exactly what was presented at trial? No, you said that the defense lawyer got all the information that was available and shared that with the judge. Let me clarify. What I'm saying is that there's absolutely nothing in the record indicating that there was something else out there. So to be clear, I'm not saying that I'm infallible and have a view of all the facts out there that defense counsel didn't have and rest assured, I'm not saying that at all. What I'm saying is that there's nothing in the record that I could have pointed to in reviewing the record to say that counsel had this fact, should have brought that forward. The bottom line is that the personal report that Roger Moore gave to the court apparently is the only record that is available that's based on what counsel said when they spoke to Mr. Carney, I believe, from Ceramic Health Services. So while I'm not trying to condone that this was best practice or anything like that, there wasn't enough to say that this was clearly ineffective assistance of counsel. And based on the cases that we've cited, people versus Jackson, people versus Hall, the analysis is based on if there is a doubt that you're getting the medication, go back to the fitness hearing and look at whether or not there was any testimony that yes, it was necessary. In this case, it was necessary to receive medication. And was there any testimony suggesting that there was a period of time that the defendant could go without it and still be considered fit? In this case, there was no such testimony. In fact, contrary to that, the testimony was that you need medication up to and throughout trial. That was the assumption of the expert. For these reasons, if there are no further questions, we ask this court to remand first for a new trial or alternatively for a retrospective fitness hearing. Thank you. Thank you. May it please the court. My name is John Walters. I represent the people of the state of Illinois in the matter before you. As a matter of law, as a matter of law, missing the one dose or let's say the three doses that you were referring to earlier out of five, say, as a matter of law, that is simply insufficient all by itself. How do you know that? Do you have an expert testimony to say that? How do you know that? How do I know that? First of all, People v. Hanson, 212 Illinois 2nd, 212. It specifies what needs to be shown in order to establish a bona fide doubt. And simply missing one dose is not sufficient all by itself. It specifies three factors that you have to look at to determine whether there's a bona fide doubt. One is the defendant's demeanor and behavior in the courtroom. And that's where, especially the point that you brought out earlier, the point about doesn't counsel have some obligation to step forward? Absolutely. Why? Because one of the two things that we look at in terms of fitness are ability to understand the purpose of proceedings and the ability to assist counsel in defense. So there really is an onus on defense counsel to step forward. Let me ask you this. If after a fitness hearing a psychiatrist testifies or gives his expert opinion that this defendant is competent to stand trial with medication, does that mean with medication sometimes, with medication all the time, with medication, and what does that mean? Doesn't with medication mean with medication? It doesn't mean sometimes, does it? In this particular instance, I'm not going to fight the record. The record says the witness testified in this case that the defendant needed his medication. Does that mean, though, that he needed every single dose of it? That's what I'm asking you. Who determines? That's why we have experts that make those decisions. So is it okay for the state or the trial judge or somebody else to say, well, it's okay if you miss one dose or it's okay if you miss three. That's not going to make that much difference. Who makes that determination? You know who makes that determination is the judge. It's not the expert. It's the judge ultimately that makes the determination, and the judge makes that determination not just based on what an expert testifies to. There's more to fitness than what an expert testifies to. If there were, then we would just have an expert testify or submit an affidavit or something like that, and we'd be done. Can you distinguish this case from Jackson? I mean, talk about this case in response to your opponent's comparison to People v. Jackson. Absolutely. Jackson, first of all, is an old case, 1978. It was decided before Hanson. It was decided before the Illinois Supreme Court went through in the 1990s and really struggled with the whole issue of psychotropic medication and fitness. It's an old case. But beyond that, it's factually quite distinguishable. In that case, the defendant was adjudicated unfit. I'm not just talking about an expert came in and said, well, he needs medication and whatnot. He was adjudicated by a court to be unfit, and he was sent away for mental health treatment. And he was only brought to trial, he was only able to be brought to trial because there was a restoration hearing held in that case where they finally determined that he could be fit, but only under the circumstance that he took his medication. That's number one. Number two is that at the conclusion of the trial in that case, the judge ordered a fitness examination. So there was something in the judge's mind that this defendant was not right. And the judge ordered a fitness determination. And at the time of sentencing, that fitness determination was never done. It was never done. So here the judge proceeds to sentencing without this fitness determination that he's ordered and knowing that the defendant hasn't been on medication. Now, interesting point about Jackson. We don't know. The record isn't clear in Jackson. The opinion isn't clear in Jackson. They didn't take the time to specify how many doses the defendant in Jackson missed. He might have missed a month's worth or two months' worth. We don't know. Does that matter? It absolutely matters. Do you need expert testimony to tell you how long a medication remains in a person's system and whether the effects of the medication is gone if he misses a dose or if it's built up over a period of time? Don't you need expert testimony to tell you that? On that particular point, sure. Sure, on that particular point. But that particular point doesn't get you to a bona fide doubt. It doesn't decide the issue. I cited you not one but four cases. In this case, though, let's start at the beginning. Okay. The judge ordered a fitness examination. As a result of that, there was an expert opinion that this defendant was fit for trial with medication. And the judge clearly accepted that. But as things progressed, it now turns out that we are in trial and the defendant didn't have his medication. So you're saying that the judge had no obligation to do anything, that it was okay. I mean, that's your argument. Oh, no, no, no. That he missed a dose or three doses and that didn't really make that much difference because he appeared to be normal, acting normally. That's what you said. To the contrary, no. The judge did conduct an inquiry in this case. The judge inquired of the defendant, tried to get to the bottom of, A, what kind of medication you're on, how long have you been taking it, how many have you missed. Made a record on that. Then turned to defense counsel, said, please, if you've got some issue here, if you are not able to communicate with your client, let me know. Bring this up. It's possible there, if there really were an issue on the second prong of fitness, that defendant couldn't assist counsel in his defense. That was the opportunity. That might have been the bona fide doubt. If counsel had said, you know what, he's stark raving mad. Mr. Walters, the defendant is raising the point that once the fitness issue is raised, once the defendant said, I missed my medication, they screwed up in the various departments, they didn't bring the medication to me. I recognize maybe the court has an obligation, but your defendant here is stressing that the burden then fell upon the state to prove, by a preponderance of the evidence, that he was fit. Your Honor. Was he correct in that? Only if there's a bona fide doubt. You have to have a bona fide doubt. If you don't have a bona fide doubt, you don't have a fitness issue. The fact that he didn't get his medication that day raises a bona fide doubt. Not under the law. And I will cite you four cases. I'm sorry, Your Honor, I'll cite you four cases. And the Illinois Supreme Court has already spoken on this. And I cited these four cases in my brief. They're Woodward, Williams, and Brown, and Hall. All four of these cases were cases where the defendant should have been on their medication and they weren't. And in Hall. I am having difficulty understanding how the regimen of a prescribed drug can become a matter of law. It's a question of fact. The proper regimen, what is necessary to maintain the level of medication to keep this individual fit for trial is a matter subject to a factual question, not as a matter of law. Well, taking it just for a moment, just as a factual question, Your Honor, you must keep in mind that this defendant was found to be a malingerer. You must absolutely weigh that when you consider. If you're going to make a factual determination here on appeal, you must consider, as the trial court obviously did, in taking into account all this information. Remember, Hanson, there's three factors that a court's supposed to look at in terms of whether there's a bona fide doubt or not. This defendant was found to be a malingerer. So whatever representations he's making up there about whether he received his medication or not, it had to be taken with a grain of salt by the trier of fact who was there listening to this defendant. Well, evidently the judge did take it with a grain of salt. What your opponent is saying is that that's contrary to the law. Once there is a finding that this defendant is only fit for trial with medication, that means with medication. It doesn't mean with medication sometime, or most of the time it means with medication. But, again, A, you've got to cross that factual threshold that he actually wasn't receiving the medication, and B, it's not as simple as that. You can't just say, well, he was or was taking medication. I mean, this issue has already been long decided by the Illinois Supreme Court in terms of you're receiving psychotropic medication, so therefore you're automatically unfit. No. The mere dose here, one way or the other, of psychotropic medication does not unfit this man. Mr. Walters, I don't think that's what your opponent's argument is. As I understand it, he's saying that the trial court already accepted the fact that this defendant would only be fit for trial if he was taking medication. With medication means just that. So if he is not getting the medication, that raises, per se, a bona fide doubt as to whether or not he's fit. And at that point, it was incumbent on the state to show by clear and convincing evidence that no, that didn't happen. That's his argument, as I understand it. Right. I agree that that's his position. And my point to you is, A, factually, there's great difficulties there because the defendant's a malingerer, and, B, the law requires more than just a missed dose. The law requires an actual bona fide doubt. And to do that, you've got to look at demeanor. You've got to look at what counsel is saying. That's number two. Is there anything in this record that approaches clear and convincing evidence in terms of, I mean, not reading between the lines or drawing inferences. Is there anything in this record that you can point to that says, here, these are the things that we pointed out to the trial judge at the time, and it's in the record, and this was clear and convincing. Is there any body of information of that nature in this record? Yes, in a couple of different sources. One is the trial court himself. The trial court at the time says, I don't find an issue of fitness here. I've examined this defendant on the issue of his claim that he's not receiving his medication. I don't find an issue of fitness here. Counsel, talk to him. If there is some issue that I've missed here, raise it. Otherwise, I don't find an issue here. And then, later on in the post-trial motion, the source was twofold. One was from the prosecutor who said there was no sign or symptom at all in this case that this defendant was unfit. And the trial judge essentially made the same finding in dismissing the post-trial motion. And the only point that was brought up in the post-trial motion was not, I can't, counsel couldn't, I'm sorry, client couldn't communicate with me. He couldn't assist in his defense. Those are the two points on fitness. It's not whether you should be receiving medication or not. It's not a mental wellness test. Fitness is about the ability to understand the proceedings and the ability to assist counsel. And the only point that counsel raised was purely medication. It didn't say anything about the client couldn't understand me, we couldn't talk strategy, couldn't recall what happened. And this is important because, Your Honor, two cases are exactly on point, and that's Hall and Brown. And those are both cases where the defendant. Mr. Walters, it seems to me very ludicrous that this whole trial is going on. It's proceeding only for the fact that Dr. Guzman, uncontradicted, said, you can only have a trial with this guy if he's properly medicated. And then during the trial, all of a sudden the court comes up with the notion, well, we're going to proceed anyway because it's only one dose or whatever that he missed. So he's directly refuting the doctor's uncontradicted testimony. Your Honor, Hall and Brown speak. You would have to overrule Hall and Brown in order to reach the decision that you're angling for. You would have to overrule those both cases because both of those cases say. We don't mind doing that. Well, then we'll take it downstate. No, let me. I'm sorry. Go ahead. I would caution you about addressing the court about what we're angling for. What we can do and can't do. I really think that that's a little bit over the line. Go ahead, Justice Gomez. Is there in the record in this case a statement by the learned Judge Doody, right? Correct, Your Honor. That I do not have a bona fide doubt as to Mr. Moore's fitness. Can I answer with what he actually says? Oh, yeah. Okay, because he doesn't use exactly those words. He says I find no issue of fitness in this case. Same thing in a different word. That's my position. Okay, and that's in the record. That's his finding. When? When this whole issue comes up. Post-trial motion? No. Or during pre-trial? At trial, day of trial where this whole issue comes up. And that's after he's had the opportunity to talk to this defendant and the trial counsel about this whole issue. If we were to decide for the defendant, would this remand or a retrospective hearing be the proper course? Well, clearly it would be a retrospective fitness hearing because you have Dr. Guzman examine this defendant. I think the fitness hearing took place approximately two months before trial. It's not we're talking years difference here. I think Dr. Guzman would be eminently qualified to speak to whether one dose would really make that much of a difference in this particular case, if that were necessary. And obviously our position is that that's not necessary. Where is he now? He's on parole. I just want to emphasize, I want to make sure I make clear that there are three points that have to be examined in terms of deciding whether there's a bona fide doubt. And one is the demeanor, the conduct of the defendant. One is what information defense counsel brings to the table. That's another element that under Hanson, Illinois Supreme Court, has to be looked at. And the third element, the third element is medical findings. Any testimony by a medical expert. That's certainly a relevant factor, but it's one of three relevant factors. It's not the only thing you look at. And that's why Brown and Hall come out the way they do. Because it's simply insufficient to say one dose all by itself raises a bona fide doubt. You have to look at, under Hanson, you have to look at these other two factors. That's the law in Illinois. With respect, the people ask that you affirm, respectfully request that you affirm the defendant's conviction and sentence in this case. Thank you, counsel. Brief rebuttal, Mr. McHenry. Yes, Your Honor. First, with respect to the argument that the defendant is a malingerer and therefore we can't trust the defendant. The person who said that they were a malingerer, of course, was the same person who on another occasion said they didn't have findings that they were a malingerer and the same person, the same expert, who found him fit for trial on the express condition that he be medicated. So that's clear. Second, and more importantly, is that the state is arguing that based on Hall and based on Brown, that they dictate the outcome in this case. And that's simply not true in Hall. The court specifically said we have expert testimony saying it would take at least three weeks for the defendant to regress to a point where they may not be fit. And based on that fact, it's very different from our case where there's absolutely no testimony saying it takes so long and then he'd eventually regress. In ours it says he needs it up to throughout trial and it's necessary. And then finally, with respect to the fact that it should be the judge's determination and not just an expert's opinion, that is a true statement of the law. However, the judge exercised his determination when he listened to the fitness  and with all that information determined, you're found fit on the express condition that you're medicated for trial. So with respect to that issue, the judge did make a determination and that ruling was he needed medication for trial. Based on those reasons, we ask this court to remand either for a new trial or a retrospective fitness hearing. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.